HERNÁNDEZ ET AL., DEMANDANTES Y APELADOS, v. MENDOZA ET AL., DEMANDADOS Y APELANTES.

Apelación procedente de la Corte de Distrito de Humacao en pleito sobre reivindicación.

No. 1767.—Resuelto en mayo 21, 1918.

REIVINDICACIÓN—PRESCRIPCIÓN EXTRAORDINARIA.—Apareciendo de la prueba en este caso que desde 1877, esto es, 39 años antes de la interposición de la demanda y 35 antes de la gestión más antigua hecha por la parte demandante en defensa de su derecho, la vendedora del actual poseedor entró en la posesión de la finca en concepto de dueña y en tal concepto continuó pública y quietamente, sin interrupción alguna, hasta que la trasmitió al demandado, es necesario reconocer en el demandado un título por prescripción extraordinaria superior al que puedan ostentar los demandantes.

Los hechos están expresados en la opinión.

Abogado de los apelantes: Sr. Francisco González.

Abogados de los apelados: Sres. J. R. F. Savage y Fernando Vázquez.

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

Luis e Ignacio Jorge Hernández iniciaron este pleito en la Corte de Distrito de Humacao en reivindicación de una finca urbana situada en el pueblo de Naguabo, poseída en la actualidad por el demandado Juan Mendoza.

Quedó plenamente demostrado en el acto de la vista que el 5 de febrero de 1877, Pablo Lemoureux vendió por escritura pública a Cecilia Hernández, madre de los demandantes, la finca en cuestión, inscribiéndose el título en el registro de la propiedad el 18 de octubre de 1880. Examinada aisladamente esa prueba, surge claro de ella el derecho de los demandantes.

El demandado Mendoza alegó que en julio de 1877 Cecilia Hernández vendió a Francisca Valdés la finca a que se refiere este pleito, y desde entónces hasta el año 1909 la vino poseyendo pública y pacíficamente, en concepto de dueña, sin interrupción alguna, y que, estando en ruinas la casa, Francisca Valdés la vendió con el solar al demandado quien la

reedificó y desde esa fecha la viene poseyendo pública y pacíficamente en concepto de dueño, sin interrupción alguna. El demandado Mendoza acreditó su dominio de acuerdo con la ley hipotecaria en el mismo año de la compra, 1909, y lo inscribió en el registro de la propiedad.

Si es cierto que Cecilia Hernández se desprendió del dominio de la finca, cae por su base el derecho de los demandantes. También quedaría su derecho destruído si se demostrara que Francisca Valdés a la muerte de Cecilia Hernández, ocurrida el 1877, había entrado de buena o de mala fe en la posesión de la finca, en concepto de dueña, y había permanecido en ella pública y pacíficamente, sin interrupción de nadie, hasta que la vendió al demandado Mendoza.

Examinemos la prueba. Cecilia Hernández al morir, en 1877, dejó tres hijos, los dos demandantes y Julia. Los demandantes jamás han tenido intervención directa con la finca. En el acto de la vista se presentó como prueba una carta dirigida por el demandante Ignacio Jorge Hernández, conocido por Juan Bussó, a Francisca Valdés, fechada el 3 de enero de 1912, o sea más de treinta años después de la muerte de Cecilia Hernández, en donde le decía, "tengo entendido que mi madre al morir dejó una casa y terreno en el pueblo de Naguabo, y no habiendo otros herederos de mi difunta madre, por haber fallecido los otros hermanos, me dirijo a usted por medio de la presente, para que me conteste cuándo está usted dispuesta a entregarme, pues habiendo hablado con un tío mío, éste me ha dicho que usted quiere saber el paradero de nosotros para entregarnos dichas fincas, herencia que nos dejó al morir mi referida madre Cecilia Hernández." Esa es la única prueba aportada que revela alguna gestión por parte de los demandantes, que desde muy niños salieron del pueblo donde nacieron y han residido siempre fuera de él.

Julia Hernández, por el contrario, continuó residiendo en Naguabo a la muerte de Cecilia, habitando, en compañía de Francisca Valdés, la casa en cuestión, hasta su muerte, ocurrida en estado de soltería el 30 de agosto de 1891. Si Julia

Hernández continuó poseyendo como dueña la casa, claro es, como sostiene la parte apelada, que su acción aprovecharía a los demandantes.

El hecho de decisiva importancia en este pleito es, pues, el del carácter de la posesión de Francisca Valdés a la muerte de Cecilia Hernández.

En la prueba de la parte demandante no se encuentra dato alguno específico que revele el verdadero concepto en que quedó Julia en la casa al morir Cecilia. La teoría de dicha parte es la de que siendo la madre dueña, a su muerte como dueños quedaron en la posesión sus herederos representados por Julia. Y, en verdad, así será necesario reconocerlo, a no ser que se pruebe que la parte demandada adquirió la propiedad en alguna de las dos formas que se han indicado.

El demandado Juan Mendoza declaró que ''esa casa la adquirió por compra a Dña. Francisca Valdés en la suma de cien pesos, pero que lo que compró fueron los escombros de lo cual hace siete años; que conoce esa casa hace cuarenta años y conoció en posesión de ella a Pancha Valdés que la poseía como dueña; que la vivía y pagaba las contribuciones y durante ese tiempo le hizo algunas reparaciones.''

Francisca Valdés dijo: ''que la casa esa se la vendió la dueña Cecilia Hernández antes de morir; y continuó siendo de la propiedad de la declarante; que Cecilia Hernández se enfermó y la llamó para que la asistiera encargándola de su cuidado y del de una chiquita que tenía, y decía: 'Que moría conforme porque la declarante le cuidaba la chiquita'; que le vendió la casa en ciento cincuenta pesos para que cuidara la chiquita y la casa quedó de la propiedad de la declarante, quien crió la chiquita y la educó en la escuela española, haciendo muchos gastos, hasta la edad de quince años en que se picó del pecho y se murió; que Cecilia Hernández le hizo un papel el cual con el recibo de las contribuciones se le perdió en el temporal de 'San Ciriaco' porque la casa se deste-

chó; que recuerda que en ese papel intervinieron don Jesús Pereyó y don Rafael Rocca;    *    *    *.''

El testigo Jesús Pereyó manifestó ''que hace muchos años, al poco tiempo de llegar a Naguabo allá por el año 1877, un día que estaba en la alcaldía de Naguabo con el Sr. Rocca v el señor Maldonado, fueron a la casa de Cecilia Hernández y ella en presencia del declarante y de los demás manifestó su deseo de donar una casita a Francisca Valdés y el Sr. Maldonado, que era curial, escribió el documento en presencia de todos, en cuyo documento la señora Hernández le hacía donación de una casita pequeña, mala, que decía que era suya, a Francisca Valdés, por asistencia que ella le practicaba y también para que le atendiera a una niñita que tenía. Todo eso hay que tener en cuenta que fué obra del señor Rocca, que era muy amigo de esa señora y dado su buen corazón y su manera de ser; que se hizo un documento como una especie de donación y que lo firmaron el declarante, Rocca y Maldonado;    *    *    *    que Francisca Valdés estuvo en posesión de esa casa por muchos años,    *    *    *;    que estuvo ella allí todo el tiempo hasta que la casita quedó desmantelada y ella le vendió esos escombros a Juan Mendoza;    *    *    * que la causa del contrato que presenció fué la atención que prestara la señora Valdés a Cecilia Hernández y a la niñita en lo sucesivo, porque la madre de esa niña estaba muy enferma;    *    *    * Francisca Valdés no pagaba nada, no pagó ningún dinero; se le fijaron ciento cincuenta pesos, lo que ella calculaba que le debía por la asistencia de ella y para que le continuara en lo sucesivo cuidando la niñita; fué una donación para que cuidara de la niñita y lo que ya había recibido, pero en aquel momento no le dió nada.''

Francisco Fuentes declaró ''que esa casa la conoció allá por el año 80 a 82, a doña Pancha Valdés viviendo allí con su hermano Pedro, y una niñita que criaba y no era hija de ella; que desde esa fecha la conoció en posesión de esa casa hasta hace ocho o nueve años que la vendió a Juan Mendoza    *    *    *    que ella poseía la casa como dueña    *    *    *.''

La prueba que antecede fué apreciada por el juez senten-
ciador así:

La prueba traída por los demandados en apoyo de su alegación
referente a la venta que según ellos hiciera Cecilia Hernández a la
Francisca Valdés, no ha podido convencer al Tribunal. En efecto,
la propia Francisca Valdés declaró, que había adquirido en virtud de
un documento extrajudicial que se le había extraviado, y así las
cosas, quiso dicha demandada corroborar su declaración con la del
testigo Jesús Pereyó, y lejos de establecer tal corroboración, resultó
un verdadero conflicto entre las manifestaciones de la demandada y
del expresado testigo. Según ella, el documento extraviado decía
que, Cecilia Hernández vendía la casa por el precio de ($150) ciento
cincuenta pesos, con la condición de que la demandada Valdés, cui-
dara siempre de Julia Hernández, hija de la supuesta vendedora.
Según Pereyó, que alegó estar presente en el momento de realizarse
la operación, no se trató de dinero alguno, y la única causa del contrato
fué que la Valdés se obligaba a cuidar de la niña Julia Hernández.

"Somos de opinión que, Cecilia Hernández no hizo venta alguna
a Francisca Valdés, y siendo ello así, aceptando que el título de com-
praventa que ostenta Mendoza fuera suficiente para adquirir la pres-
cripción de dominio sobre el inmueble reclamado en la demanda,
nunca podría alegarse que el demandado Mendoza haya adquirido tal
dominio, toda vez que no han transcurrido diez años, desde que él
adquirió, sin que pueda unirse el tiempo que él ha poseído a la pose-
sión de su causante, ya que ésta, o sea, Francisca Valdés, no poseía
en concepto de dueña, y sólo tenía la mera tenencia de la cosa, sin
título alguno y sin buena fe."

Generalmente esta corte acepta la apreciación de la prueba
hecha por el juez que tuvo la oportunidad de examinar per-
sonalmente los testigos, pero esto no quiere decir que esté
obligada a aceptarla en todos los casos. La parte deman-
dada trató de establecer dos hechos, el de la trasmisión de
la propiedad de la finca a Francisca Valdés y el de la pose-
sión de ésta y de Mendoza en concepto de dueños por un pe-
ríodo mayor de treinta años, y, la corte de distrito no dió
crédito alguno a la prueba que se introdujo con tal propósito
a saber: los testimonios de Juan Mendoza, de Francisca Val-
dés, de Jesús Pereyó y de Francisco Fuentes. Nadie con-

tradijo las manifestaciones de dichos testigos y el conflicto que nota el juez sentenciador entre las declaraciones de la Valdés y de Pereyó es más bien aparente que real, y si algo revela es que dichos testigos no se pusieron de acuerdo con anterioridad al juicio. Francisca Valdés no dijo que ella entregara la suma de ciento cincuenta pesos. Ella manifestó que Cecilia le vendió la casa en ciento cincuenta pesos para que le cuidara la chiquita. Y esta manifestación de la Valdés puede armonizarse con las últimas del testigo Pereyó que dejamos transcritas.

A nuestro juicio no hay motivos para desechar los indicados testimonios, y dándoles el valor que merecen es necesario reconocer que no ya sin título, sino con un título más o menos perfecto Francisca Valdés desde 1877, esto es, 39 años antes de la interposición de la demanda y 35 antes de la carta del demandante Ignacio Jorge Hernández, que constituye la gestión más antigua hecha por la parte demandante en defensa de su derecho, la vendedora del actual poseedor entró en la posesión de la finca en concepto de dueña y en tal concepto continuó pública y quietamente, sin interrupción alguna, hasta que la trasmitió al demandado Mendoza. Siendo esto así, es necesario reconocer en Francisca Valdés y en su sucesor Mendoza por lo menos un título por prescripción extraordinaria superior al de los demandantes. "Se prescriben también el dominio y demás derechos reales sobre los bienes inmuebles por su posesión no interrumpida durante treinta años, sin necesidad de título ni de buena fe, y sin distinción entre presentes y ausentes. * * *" Art. 1860 del Código Civil. Véanse los casos de *Sucesores de Ramón Lampón* v. *Sucesores de Canuto Rivera,* 16 D. P. R. 339, y *Pesquera* v. *Fernández et al.,* 22 D. P. R. 53.

Siendo el expresado nuestro juicio, se hace innecesario estudiar y resolver las demás cuestiones planteadas por el apelante en su alegato.

La sentencia apelada debe revocarse y en su lugar dictarse otra declarando la demanda sin lugar.

> *Revocada la sentencia recurrida y desestimada la demanda sin especial condenación de costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.